O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ANA M. LUGO,                              )      NO. CV 09-01446-MAN
                                          )
                Plaintiff,                )
                                          )      MEMORANDUM OPINION
        v.                                )
                                          )      AND ORDER
MICHAEL J. ASTRUE,                        )
Commissioner of Social Security,          )
                                          )
                Defendant.                )
_____ )

Plaintiff filed a Complaint on March 5, 2009, seeking review of the denial by the Social Security Commissioner ("Commissioner") of plaintiff's application for a period of disability and disability insurance benefits ("DIB"). On March 27, 2009, the parties consented to proceed before the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). The parties filed a Joint Stipulation on September 28, 2009, in which: plaintiff seeks an order reversing the Commissioner's decision and awarding benefits or, in the alternative, remanding the matter for further administrative proceedings; and defendant seeks an order affirming the Commissioner's decision. The Court has taken the parties' Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On June 27, 2008, plaintiff filed an application for a period of disability and DIB, alleging an inability to work since April 7, 2008, due to fibromyalgia and depression. (Administrative Record ("A.R.") 28-30, 43.) Plaintiff has past relevant work experience as an electronics assembler. (A.R. 35-37.)

The Commissioner denied plaintiff's application initially. (A.R. 21-25.) On September 8, 2008, plaintiff filed a Request for Hearing before an administrative law judge, but waived her right to appear and testify at the hearing.[1] (A.R. 26.) Instead, plaintiff requested that a decision be made based on the evidence. (*Id.*) On October 8, 2008, plaintiff filed a second Request for Hearing before an administrative law judge.[2] (A.R. 18.) In the second request, Plaintiff indicated that she wished to appear and testify at a hearing. (*Id.*) On October 14, 2008, Administrative Law Judge James D. Goodman ("ALJ") denied plaintiff's claims based on the evidence in the record (A.R. 10-15), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 1-3).

---

[1]   Plaintiff signed the Request for Hearing on September 5, 2008, but notations by the Social Security Administration indicate that she did not file it until September 8, 2008. Although plaintiff retained counsel on September 2, 2008, counsel did not sign this request. (A.R. 19, 26.)

[2]   The second Request for Hearing is dated October 2, 2008, but was not received by the Social Security Administration until October 8, 2008. (A.R. 18.)

2

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that plaintiff has not engaged in substantial gainful activity since April 7, 2008, the alleged onset date of disability. (A.R. 12.)  The ALJ determined that plaintiff has hypertension, controlled, and non-insulin dependent diabetes mellitus, which in combination, are severe impairments. (A.R. 12.)  The impairments do not meet or equal one of the listed impairments in 20 C.F.R. Part 404, Appendix 1, Subpart P. (A.R. 13.)  The ALJ found that plaintiff does not have a severe mental impairment.[3] (A.R. 12-13.)

In setting forth plaintiff's residual functional capacity ("RFC"), the ALJ relied on the opinion of a non-examining State agency review physician, who found that plaintiff has no physical limitations. (A.R. 13-14.)  The ALJ determined that plaintiff has the RFC to perform a full range of medium work as defined in 20 C.F.R. § 404.1567(c),[4] and as a result, she is capable of performing her past relevant work as an electronics assembler. (A.R. 13.)

_____

[3]  The ALJ found that plaintiff has a "medically determinable impairment of a depressive disorder, [not otherwise specified]," but that plaintiff's mental impairment was not severe. (A.R. 12-13.)  The Court notes that the ALJ, in reaching this conclusion, made an incorrect statement of law.  One reason the ALJ found plaintiff's depressive disorder to be not severe was because "she has not shown that her psychiatric symptoms have lasted for [twelve] or more continuous months." (A.R. 12.)  Disability, however, is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . *can be expected to last* for a continuous period of not less than 12 months." 42 U.S. 423(d)(1)(A) (emphasis added). *See* Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)

[4]  Medium work is defined as work that "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).

3

Accordingly, the ALJ concluded that plaintiff was not disabled, as defined in the Social Security Act, from April 7, 2008, the alleged onset date, through the date of the decision. (A.R. 14.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). While inferences from the record can constitute substantial evidence, only those "'reasonably drawn from the record'" will suffice. Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Human Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

4

1    The Court will uphold the Commissioner's decision when the evidence
2    is susceptible to more than one rational interpretation.  Burch v.
3    Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  However, the Court may
4    review only the reasons stated by the ALJ in his decision "and may not
5    affirm the ALJ on a ground upon which he did not rely."  Orn, 495 F.3d
6    at 630; see also Connett, 340 F.3d at 874.  The Court will not reverse
7    the Commissioner's decision if it is based on harmless error, which
8    exists only when it is "clear from the record that an ALJ's error was
9    'inconsequential to the ultimate nondisability determination.'"  Robbins
10   v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)(quoting Stout v.
11   Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch, 400 F.3d
12   at 679.

13
14                              **DISCUSSION**
15
16       Plaintiff alleges the following four issues:  (1) whether the ALJ
17   properly considered the opinion of physician's assistant Edgar James
18   Jackson; (2) whether the ALJ properly considered the type, dosage, and
19   side effects of plaintiff's medications; (3) whether the ALJ properly
20   considered the actual mental and physical demands of plaintiff's past
21   relevant work; and (4) whether the ALJ properly considered the lay
22   witness testimony.  (Joint Stipulation ("Joint Stip.") at 2-3.)

23
24   **I.   The ALJ Was Not Required To Discuss The "Opinion" Of Physician's**
25        **Assistant Edgar James Jackson.**

26
27       An ALJ is not required to discuss every piece of evidence in the
28   record.  See Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003)

                                    5

("[I]n interpreting the evidence and developing the record, the ALJ does not need 'to discuss every piece of evidence.'")(citation omitted).  The Social Security Administration's regulations state that, "[i]n addition to evidence from the acceptable medical sources . . . we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work."  20 C.F.R. § 404.1513(d).  An ALJ does not commit legal error by failing to incorporate a two-word diagnosis by a physician's assistant who has only examined plaintiff on one occasion.  (A.R. 676-79.)

On September 12, 2008, plaintiff visited the urgent care center at Kaiser Permanente ("Kaiser").  (A.R. 676.)  A physician's assistant, Edgar James Jackson, examined plaintiff.  (*Id.*)  Mr. Jackson issued an after visit summary that lists plaintiff's vitals and medications and reflects a diagnosis of "anxiety disorder."  (A.R. 676-79.)  The after visit summary contains no other relevant information, including a description of what symptoms plaintiff was experiencing.  The record reflects that Mr. Jackson only examined plaintiff on this occasion and does not indicate that a physician reviewed the summary.

Plaintiff contends that the ALJ erred in failing to discuss this after visit summary and provide a "legally sufficient" reason for dismissing it.  (Joint Stip. at 3.)  As an initial matter, Mr. Jackson is not an acceptable medical source.  20 C.F.R. § 404.1513(a).  He is a physician's assistant, and there is no evidence that he worked closely with any of plaintiff's doctors such that he was acting as a doctor's agent and could be considered an acceptable medical source.  *See* Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir. 1996)(finding that a nurse

practitioner who worked in conjunction with, and under the supervision of, a physician could be considered an acceptable medical source). Thus, the after visit summary is not a medical opinion that the ALJ was required to discuss.  20 C.F.R. § 404.1527(a)(2) ("Medical opinions are statements from physicians or psychologists or other acceptable medical sources . . . .").  Instead, a physician's assistant constitutes an "other source," whose opinion the ALJ **may**, but is not required to, consider.  20 C.F.R. § 404.1513(d)(1).

Here, the after visit summary reflects a mere two-word diagnosis by a physician's assistant followed by what appears to be a cut and paste summary of the standard treatment plan information Kaiser provides to any patient diagnosed with anxiety disorder.  (A.R. 676-79.)  Mr. Jackson's diagnosis was unsupported by any notes or evidence, and the summary failed to even list the reason for plaintiff's visit.  In sum, the after visit summary is not an opinion from an acceptable medical source and provides no information as to plaintiff's symptoms, limitations, and daily functioning.[5]

Accordingly, the ALJ was not required to discuss Mr. Jackson's after visit summary, and did not err in failing to do so.

---

[5]   The Court further notes that plaintiff never alleged that she suffered from anxiety in her initial application or on appeal.  (A.R. 43, 77.)  Plaintiff alleged that she was unable to work due to her fibromyalgia and depression.  (*Id.*)  Indeed, plaintiff submitted hundreds of pages of her medical history, and none mention anxiety. (*See* A.R. 108-19, 136-603, 613-681.)

**II.  There Is No Reversible Error With Respect To The ALJ's Consideration Of The Side Effects Of Plaintiff's Medications.**

Pursuant to Social Security Ruling ("SSR") 96-7p, an ALJ must consider the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms."  However, an ALJ need only consider those medication side effects that have a "significant impact on an individual's ability to work."  Erickson v. Shalala, 9 F.3d 813, 817-18 (9th Cir. 1993)(citation omitted).  Side effects of medications not severe enough to interfere with a claimant's ability to work are properly excluded from consideration.  *See* Osenbrock v. Apfel, 240 F.3d 1157, 1164 (9th Cir. 2001)("There were passing mentions of the side effects of [the claimant's] medication in some of the medical records, but there was no evidence of side effects severe enough to interfere with [the claimant's] ability to work.").

Plaintiff contends that the ALJ failed to consider the type, dosage, and side effects of plaintiff's medications properly.  (Joint Stip. at 6-7.)  Plaintiff, however, has not met her burden to show that the use of medications, and any side effects therefrom, had a negative effect on her ability to work.  *See* Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985)(stating that a claimant bears the burden of proving that her medication impairs her ability to work).

The only evidence regarding plaintiff's alleged side effects are from her own statements to the Social Security Administration in the Disability Report – Appeal.  (A.R. 79-80.)  *See* Thomas v. Barnhart, 278

F.3d 947, 960 (9th Cir. 2002)(finding that the ALJ properly excluded claimant's allegations of side effects, because '[t]he only evidence regarding [side effects were the claimant's] own statements to her doctor and her testimony at the hearing"); *see also* <u>Moore v. Astrue</u>, 2009 WL 497503, *7 (C.D. Cal. Feb. 26, 2009)("References to side effects made only to the social security administration are not alone evidence that the side effects of the medications are severe enough to affect [the claimant's] ability to work."). The passing references to side effects from plaintiff's medications are inadequate to establish a disabling condition, because there is no evidence to show that plaintiff's purported side effects resulted in functional limitations that were severe enough to interfere with her ability to work. *See* <u>Osenbrock</u>, 240 F.3d at 1164 (finding that side effects not severe enough to impair ability to work are not relevant).

Further, plaintiff's statements in the Disability Report - Appeal (A.R. 79-80) about side effects are contradicted by her prior statements in the Disability Report - Adult (A.R. 43-49). Plaintiff alleges, among other things, that she experiences the side effects of sleepiness and dry mouth from her usage of Fluxetine, Meloxican, Metformin, and Prozac. (A.R. 79-80.) In a previously submitted Disability Report, however, plaintiff stated that she experienced no side effects from these medications. (A.R. 47.) In addition, although plaintiff has reported some side effects from certain medications to her physicians, plaintiff is no longer taking those medications. (*Compare* A.R. 79-80 and 112, 197.)

Thus, plaintiff did not meet her burden of demonstrating that her

9

use of medications impaired her ability to work. Accordingly, the ALJ did not err in his consideration of the side effects of plaintiff's medication.

**III. The ALJ Failed To Properly Consider The Opinion Of Anna Lugo.**

In evaluating the credibility of a claimant's assertions of functional limitations, the ALJ must consider lay witnesses' reported observations of the claimant. Stout, 454 F.3d at 1053. "[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [the claimant's] condition." Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993); 20 C.F.R. § 404.1513(d)(4) ("[W]e may also use evidence from other sources to show the severity of your impairment(s). . . . Other sources include, but are not limited to . . . spouses, parents and other care-givers, siblings, other relatives, friends, neighbors, and clergy."). "If an ALJ disregards the testimony of a lay witness, the ALJ must provide reasons 'that are germane to each witness.'" Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009)(citation omitted). Further, the reasons "germane to each witness" must be specific. Stout, 454 F.3d at 1053-54 (explaining that "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony").

An ALJ may "properly discount lay testimony that conflict[s] with the available medical evidence," Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984), particularly, when, as in Vincent, "lay witnesses [are] making medical *diagnoses*," because "[s]uch medical diagnoses are beyond the competence of lay witnesses and therefore do not constitute

competent evidence." <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1467 (9th Cir. 1996)(original emphasis).   When, as here, however, a lay witness testifies about a claimant's symptoms, such testimony *is* competent evidence and cannot be disregarded without comment. *Id*.   "[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." <u>Stout</u>, 454 F.3d at 1056.

Plaintiff contends that the ALJ improperly ignored the lay witness statements of her daughter, Anna Jessica Lugo. (Joint Stip. at 11-12.) In a Function Report - Adult Third Party Questionnaire dated July 15, 2008 (the "Questionnaire"), Ms. Lugo provided observations regarding plaintiff's alleged impairments and their impact on plaintiff's daily activities and ability to work. (A.R. 56-63.) Ms. Lugo stated that she visits plaintiff four to five times a week for two to three hours each time. (A.R. 56.) Ms. Lugo further stated that, prior to plaintiff's alleged disability, plaintiff used to be "very active and lively," "cook daily," and perform household chores. (A.R. 57, 58, 60.) Ms. Lugo also stated that plaintiff is now limited in her ability to:   perform household chores; cook; handle money; perform physical activities, such as lifting, walking, and sitting; concentrate; and follow instructions. (A.R. 58-61.)   In addition, plaintiff's pain will wake her up throughout the night and makes it "uncomfortable to be out or travel." (A.R. 57, 61.)   Ms. Lugo explained that plaintiff is no longer the "happy person she used to be," and her "condition has made her very emotional." (A.R. 60, 62.)

11

1   The Questionnaire corroborates the symptoms alleged by plaintiff
2   allegations and mentioned in her medical history.  Yet, the ALJ fails to
3   even mention the Questionnaire in the decision, much less provide
4   germane reasons for rejecting Anna Lugo's observations of her mother's
5   impairments.   The  ALJ's  failure  to  do  so  constitutes  error.
6   Specifically, the ALJ should have addressed Ms. Lugo's observations
7   regarding plaintiff's daily activities, memory lapses, difficulty
8   concentrating, and difficulty following instructions (A.R. 58-61),
9   because such observations are neither medical diagnoses nor do they
10  conflict with medical evidence, as defendant contends (Joint Stip. at
11  13).  *See* Nguyen, 100 F.3d at 1467 (finding it was error for the ALJ to
12  reject lay testimony concerning claimant's symptoms); Dodrill, 12 F.3d
13  at 918-19 (remanding, in part, because the ALJ failed to provide germane
14  reasons for rejecting lay testimony concerning claimant's fatigue and
15  inability to perform household chores).

16

17      Further, contrary to defendant's assertion, the ALJ's failure to
18  discuss Ms. Lugo's testimony is not harmless error.  The Court cannot
19  confidently conclude that if Ms. Lugo's observations are fully credited,
20  "no reasonable ALJ . . . could have reached different determination."
21  Stout, 454 F.3d at 1056.   In particular, if the ALJ failed to reject
22  the observation of Ms. Lugo for proper reasons, such failure by itself
23  or in combination with the ALJ's improper rejection of the opinions of
24  plaintiff's treating physicians[6] may require the ALJ to reach a different
25  conclusion as to which impairments are severe, to reassess plaintiff's

26  _____

27  [6]      As discussed *infra*, the ALJ failed to properly discuss the opinion
    of plaintiff's treating physicians and provide specific and legitimate
28  reasons for rejecting them.

12

1  RFC, and to reach a different disability determination.

2

3      On remand, the ALJ must provide germane reasons, if they exist, for

4  rejecting Ms. Lugo's statements regarding her observations of the nature

5  and extent of plaintiff's alleged impairments and limitations, so that

6  a reviewing court may know the basis for the ALJ's decision and have the

7  ability to assess the propriety of that decision.

8

9  **IV.  The Resolution Of The Outstanding Issues May Require A New**

10     **Determination Regarding Plaintiff's Ability To Perform Her Past**

11     **Relevant Work.**

12

13     At step four of the disability evaluation process, "claimants have

14  the burden of showing that they can no longer perform their past

15  relevant work." Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001).

16  Although the burden is on the claimant, SSR 82-62 requires that the ALJ

17  make findings of facts as to the claimant's RFC, the physical and mental

18  demands of the past relevant work, and whether the claimant can return

19  to her past relevant work.

20

21     Plaintiff contends that the ALJ erred by failing to discuss the

22  actual mental demands of plaintiff's past relevant work.[7] (Joint Stip.

23  at 9.)   The ALJ discussed the physical demands of plaintiff's past

24  relevant work as an electronics assembler and found that, based on

25  _____

26  [7]    Although Plaintiff argues in one sentence that the ALJ failed to
    discuss the physical demands of her past relevant work, this appears to
    be an inadvertent argument as plaintiff only makes this argument once
27  and it is directly contradicted by plaintiff's inclusion of the ALJ's
    discussion of the physical demands of plaintiff's past relevant work.
28  (Joint Stip. at 9.)

1    plaintiff's own description of her past relevant work and his RFC

2    assessment, she was capable of performing such work.   (A.R.  14.)

3    Because the ALJ concluded that plaintiff did not have a severe mental

4    impairment, the Court is inclined to find plaintiff's contention without

5    merit.   However, in light of the Court's conclusion that the ALJ must

6    consider the testimony of lay witness Anna Lugo and discuss the treating

7    physicians' opinions, *see infra*, the ALJ's RFC determination may change

8    on remand.   As such, the Court cannot undertake an analysis as to the

9    propriety of the ALJ's determination at this time.

10

11   **V.    Remand Is Required.**

12

13        The decision whether to remand for further proceedings or order an

14   immediate award of benefits is within the district court's discretion.

15   Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000).   Where no

16   useful purpose would be served by further administrative proceedings, or

17   where the record has been fully developed, it is appropriate to exercise

18   this discretion to direct an immediate award of benefits.   *Id.* at 1179

19   ("[T]he decision of whether to remand for further proceedings turns upon

20   the likely utility of such proceedings.").   However, where there are

21   outstanding issues that must be resolved before a determination of

22   disability can be made, and it is not clear from the record that the ALJ

23   would be required to find the claimant disabled if all the evidence were

24   properly evaluated, remand is appropriate.   *Id.* at 1179-81.

25

26        Although plaintiff failed to raise these issues, the Court notes

27   that the ALJ completely failed to discuss plaintiff's fibromyalgia and

28   improperly rejected the opinions of her treating physicians.   Despite

14

the fact that plaintiff listed fibromyalgia as a basis for her application and her medical records are replete with references to it, the ALJ failed to even mention fibromyalgia once in the decision. Rather, the ALJ stated that plaintiff alleged "shoulder and neck problems" and "arthritis of the knees" in her application, and made one passing reference to "pain in [plaintiff's] muscles and joints" at step four. (A.R. 10, 13.) In fact, the ALJ completely ignored plaintiff's fibromyalgia allegations in his step two determination. (A.R. 12-13.)

In failing to discuss plaintiff's fibromyalgia allegation, the ALJ also improperly rejected the opinions of plaintiff's treating physicians. A treating physician's conclusions "must be given substantial weight." Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Where a treating physician's opinion is uncontradicted, the ALJ may only reject it for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when the treating physician's opinions are contradicted, "'if the ALJ wishes to disregard the opinion[s] of the treating physician he . . . must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.'" Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987) (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983); see also McAllister v. Sullivan, 888 F.2d 599 602 (9th Cir. 1989)("broad and vague" reasons for rejecting the treating physician's opinion do not suffice). The ALJ can meet this burden "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

1    Here, three treating physicians diagnosed plaintiff with
2  fibromyalgia. (*See, e.g.,* A.R. 196-99, 203-04, 206.)  Yet, the ALJ,
3  without discussion, summarily dismissed their notes and opinions,
4  stating that they "reported very little in objective findings, and
5  primarily, reported only a list of [plaintiff's] numerous complaints."
6  (A.R. 13.)  Instead, the ALJ appeared to rely solely on a State agency
7  review physician's assessment, which, by itself, is not substantial
8  evidence.  Lester, 81 F.3d at 831 ("The opinion of a nonexamining
9  physician cannot by itself constitute substantial evidence that
10 justifies the rejection of either an examining *or* a treating
11 physician.")(emphasis in original).  (A.R. 13-14; 604-05.)  Further, in
12 rejecting the treating physicians' opinions, the ALJ mischaracterized
13 the record as to plaintiff's treatment records.  *See* Regennitter v.
14 Comm'r, 166 F.3d 1294, 1297-98 (9th Cir. 1999)(finding that the
15 "inaccurate characterization" of evidence was error).  The ALJ stated
16 that plaintiff's treatment notes "cover the period of June 12, 2008
17 through August 29, 2008" and that "[n]one of the attending physicians at
18 Kaiser Permanente gives any opinions regarding the claimant's physical
19 limitations, if any." (A.R. 13-14.)  In actuality, the record reflects
20 that plaintiff's medical records, which number in the hundreds of pages,
21 include treatment notes from as early as November 1989.  (A.R. 459.)
22 Moreover, plaintiff's primary care physician, Dr. Katherine Lehman,
23 provided a letter dated August 29, 2008, and opined that plaintiff "is
24 being treated for fibromyalgia and depression," before stating
25 plaintiff's physical limitations[8].  (A.R. 613.) On remand, the ALJ must
26
27 [8]  Specifically, Dr. Lehman opined that plaintiff "could likely do
   sedentary work up to four hours per day, sitting no more than one hour
28 at a time, up to four hours per shift, standing no more than [ten]

16

provide specific and legitimate reasons, if any, for rejecting the treating physicians' opinions.  If no proper reasons exist, this may require the ALJ to reassess plaintiff's impairments and RFC, and to reach a different conclusion as to plaintiff's ability to perform her past relevant work.

Remand is the appropriate remedy to allow the ALJ the opportunity to correct the above-mentioned deficiencies and errors.  *See, e.g.,* Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)(remand for further proceedings is appropriate if enhancement of the record would be useful); McAllister, 888 F.2d at 603 (remand appropriate to remedy defects in the record).  Specifically, remand is necessary so that the ALJ may consider the severity of plaintiff's fibromyalgia and its impact on her RFC, if any.

///

///

///

///

///

///

///

///

///

minutes at a time, no more than [four] times per shift. [Plaintiff] could carry no more than [ten] pounds, up to [ten] minutes a time, no more than [four] times per shift.  She cannot do any stooping, kneeling, twisting, climbing, or operating machinery.  She cannot lift above shoulder level.  She cannot push or pull." (A.R. 613.)  In addition, Dr. Lehman stated that plaintiff has memory and concentration impairments and expressed suicidal ideation.  (*Id.*)

1

                                **CONCLUSION**

2

3         Accordingly, for the reasons stated above, IT IS ORDERED that the

4   decision of the Commissioner is REVERSED, and this case is REMANDED for

5   further proceedings consistent with this Memorandum Opinion and Order.

6   IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of

7   this Memorandum Opinion and Order and the Judgment on counsel for

8   plaintiff and for defendant.

9

10         **LET JUDGMENT BE ENTERED ACCORDINGLY.**

11

12  DATED: August 18, 2010

13                                            _____
                                              MARGARET A. NAGLE
14                                            UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    18